Patrick H. Dwyer, SBN 137743
P.O. Box 1705
Penn Valley, CA 95946
Tel: (530) 432-5407; Fax: (530) 432-9122
Email: pdwyer@pdwyerlaw.com
Attorney for Plaintiff Aram Mkrtchyan

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Aram Mkrtchyan, an individual,<br>Plaintiff<br>v.<br>Sacramento County, California, the operator of the Sacramento County Sheriff's Department ("SCSD"); and SCSD Officer Max Dugdale, and Does 1-10, in their individual capacity,<br><br>Defendants. | CASE NO.: 2:25-CV-01405-DJC-CSK<br><br>**FIRST AMENDED COMPLAINT FOR INDIVIDUAL AND *MONELL* VIOLATIONS OF 42 U.S.C. §1983; STATE LAW CLAIMS FOR ASSAULT, BATTERY, VIOLATIONS OF CALIFORNIA CIVIL CODE §52, AND DIRECT AND *RESPONDEAT SUPERIOR* LIABILITY OF SACRAMENTO COUNTY**<br><br>**JURY TRIAL DEMANDED** |

## I.
## INTRODUCTION

This is a civil rights action arising out of the deliberate and malicious beating of Plaintiff while in custody at the Sacramento County Rio Cosumnes Correctional Center in Elk Grove, California.

## II.
## JURISDICTION AND VENUE

1. Jurisdiction over the federal causes of action under Title 42 U.S.C. §1983 are proper in this Court under 28 U.S.C. §1331. Pendant Jurisdiction over the state causes of action is proper under Title 28 U.S.C. §1367(a) and Title 28 U.S.C. §1343(a)(3).

2. Venue is proper in this Court under 28 U.S.C. §1391(b) because all of the defendants reside, and the acts complained of occurred, within the territorial boundaries of this United States District Court.

3. Intra-district venue is proper in the Sacramento Division of this Court under Local Rule 120(d) because the acts and omissions that are the basis of this complaint occurred within Sacramento County.

## III.
## PARTIES

4. Plaintiff Aram Mkrtchyan ("Mkrtchyan" pronounced *"Mir-kirch-ien"*) is a single male, age 41. Plaintiff Mkrtchyan resides in Sacramento, California.

5. Defendant Sacramento County, California, established and operates the Sacramento County Sheriff's Department ("SCSD") which is responsible for the staffing and operation of the Main Jail at 651 I Street, Sacramento, California ("Main Jail") and the Rio Cosumnes Correctional Center in Elk Grove, California ("RCCC Jail").

6. Defendant Officer Max Dugdale ("Dugdale") was employed by the SCSD and was working as a jail officer at the RCCC Jail at the time of the events alleged

below.

7. Defendant Officers Does 1-5 were employed by the SCSD and were working as jail officers at the RCCC Jail at the time and in the vicinity of the events alleged below. Defendant Officers Does 6-10 were employed by the SCSD and were working as supervisory officers with responsibility for training and supervision for the use of force, conducting investigations of alleged excessive use of force, and enforcing existing SCSD policies regarding the use of force through appropriate disciplinary actions and retraining of officers.

## IV.
## FACTUAL ALLEGATIONS

[Note: the following description of the assault & battery of Plaintiff is based upon Plaintiff's best recollection. As alleged below, Plaintiff was seriously beaten and knocked unconscious which may have affected his memory of the incident. Plaintiff is informed that there is extensive video of the incident that he has not seen that may further refresh his recollection and lead to possible amendment of the following allegations.]

8. On or about November 2, 2024, at approximately 10:30 pm, Plaintiff was in custody at the RCCC Jail, honor side "G" dorm. Plaintiff was seated on his bunk with his back to the only entrance door to the G dorm. RCCC jail staff had provided Plaintiff with an electronic tablet and headphones so he could play video games.

9. While Plaintiff was engaged in a video game on the tablet, he experienced a setback in the game whereby he lost all of the electronic coins he had collected over about 20 minutes of play. Plaintiff exclaimed his disappointment at the game loss by saying out loud something like "You Son of a Bitch". Plaintiff was wearing headphones at the time, so he spoke louder then normal.

10. An inmate sitting next to Plaintiff tapped Plaintiff's foot, alerting him to the presence of Defendant Officer Max Dugdale. Plaintiff looked up from the game and lifted the headphones from one ear. Officer Dugdale, who was in the process of doing a "count time" for inmates, had apparently been standing about two or three feet away from Plaintiff when he had exclaimed his frustration at the loss of "coins" for the video game. Officer Dugdale, with a ferocious look on his face, yelled "what did you say", referring to Plaintiff's exclamation about the video game coin loss.

11. Plaintiff said he was sorry and that he did not realize that it was "count time" in the G dorm. Officer Dugdale ordered Plaintiff to walk to the area just outside of the control center for the G dorm and sit on the bench. The control center is where the deputies monitor the inmates and conduct many of their duties. Plaintiff immediately complied.

12. After completing the inmate count, Officer Dugdale came over to Plaintiff who had remained seated on the bench. As he stood over Plaintiff, Officer Dugdale told Plaintiff that he was going to be "rolled up" tonight (meaning Plaintiff would be transferred to higher security). Plaintiff asked not to be rolled up and explained that his exclamation was about the video game was not directed at Officer Dugdale. Officer Dugdale then told Plaintiff to "cut the fucking theatrics and shut the fuck up" and then added that Plaintiff was going to be "rolled up".

13. Plaintiff sat on the bench with just a T shirt on. He waited there for about 20-30 minutes, shivering the entire time. Eventually, Plaintiff got up, went over to the control room, and asked for permission to get a sweater or a blanket. Plaintiff's

request was denied and he was told to sit back down on the bench. Plaintiff complied. However, Plaintiff verbally expressed his view that making him sit there in just a T shirt, shivering, was senseless and cruel.

14. After Plaintiff had returned to the bench, Plaintiff then heard Officer Dugdale approach him from behind and say "Mkrtchyan stand up and get ready to cuff up". Plaintiff complied by standing up with his hands behind his back for cuffing. Suddenly, without warning, Plaintiff was attacked by Officer Dugdale and another SCSD officer hereafter identified as Officer Doe 1. Officers Dugdale and Doe 1 first shoved Plaintiff into a fence and then they threw him onto the ground. Plaintiff hit his head on the concrete floor and was knocked unconscious for an estimated 20-30 seconds. At some point in this portion of the attack, Plaintiff heard Officer Dugdale or Officer Doe 1 signal for other officers to come to the incident.

15. Officers Does 2, 3, and 4 then came to the incident scene and, along with Officer Dugdale and Officer Doe 1, hand cuffed Plaintiff behind his back and then proceeded to further assault and batter Plaintiff. Plaintiff never resisted in any manner. However, the Defendant Officers kept yelling "stop resisting" and continued restraining and beating Plaintiff, all the while feigning that Plaintiff was resisting and somehow responsible for the continued use of force. During the beating, at least two of the Defendant Officers grabbed Plaintiff's feet and bent his legs back, pressing his feet into the back of this thighs and buttocks, causing sever pain. Further, during the beating Plaintiff: (a) was kicked or struck very hard in his testicles; (b) suffered significant cuts and bruises to his arms, legs, and head; and (c)

one of his front teeth was knocked completely out of his jaw (and lost) and two other front teeth were knocked loose in their jaw sockets.

16. After the Defendant Officers were done with the takedown and beating, Officer Dugdale and Officer Doe 1 walked Plaintiff to the medical unit. Plaintiff was in great pain and incoherent. Plaintiff received no medical care other than having his wounds cleaned. Officer Dugdale and Officers Doe 1 and/or 2 then took Plaintiff to a maximum security area where he was held for approximately a week.

17. Plaintiff was given a disciplinary write-up for the beating based upon fabricated charges, including that he had assaulted the officers. Plaintiff never received a hearing on the write-up in violation of RCCC disciplinary rules and has been denied various privileges as a consequence. This has added to Plaintiff"s pain, suffering, and humiliation.

**Duties of Sacramento County and the SCSD to Ensure the Appropriate Use of Force by Jail Officers**

18. Defendant Sacramento County and the SCSD are obligated to have policies, practices, and procedures to prevent the unlawful use of force against detainees and inmates ("PPPs"). Plaintiff is informed and believes and on that basis alleges, that Exhibit 1 hereto is the SCSD General Order on the Use of Force ("General Order") and Exhibit 2 hereto is the Operations Order regarding the use of force at the RCCC Jail ("Operations Order"). Plaintiff is further informed and believes that, taken together, these documents (as they may have been updated on November 2, 2024) comprised the core of relevant PPPs in effect at the time of the attack on Plaintiff.

More specifically, according to Exhibit 2, ""Officers [such as Officer Dugdale and Does 1-5] shall use only that force which is reasonable, given the facts and circumstances perceived by the officer at the time of the event, to effectively bring an incident under control" and "the application of force shall cease when control of a prisoner or situation is achieved and shall not be used as a form of punishment." Plaintiff alleges that Officers Dugdale and Does 1-4 violated both the General Order and the Operations Order when they committed the acts alleged in this First Amended Complaint.

19. Defendant Sacramento County and the SCSD are obligated to adequately train their correctional officers in the PPPs to prevent, and report, the use of excessive force against detainees and inmates. Examination of the documented prior uses of excessive force set out in paragraphs 25-26 reveals at least twenty-one (21) serious violations of the General Order and the Operations Order in the ten years prior to the attack upon Plaintiff. Each of these instances were substantiated by the SCSD. However, Plaintiff is informed and believes, and on that basis alleges, that the SCSD never undertook any specific remedial and/or corrective training of its officers at the RCCC in response to these violations. As a consequence, Defendants Officer Max Dugdale and Does 1-5 were improperly trained in the PPPs and were prone to use excessive force against inmates, as they did against Plaintiff.

20. Defendant Sacramento County and the SCSD are obligated to adequately supervise their correctional officers to verify the effectiveness of the PPPs to prevent

the use of excessive force against detainees and inmates. However, Plaintiff is informed and believes, and on that basis alleges, that the SCSD never implemented any program of heightened supervision or additional supervisory measures at the RCCC Jail to ensure that the General Order and/or the Operations Order were obeyed. As a direct consequence of this failure, Defendants Officer Dugdale and Does 1-5 were more likely too use excessive force on detainees and inmates, such as the use of excessive force against Plaintiff.

21. Defendant Sacramento County and the SCSD are obligated to have an adequate and effective "Chain of Command" so that when incidents involving the use of excessive force occur, SCSD supervisory personnel can learn about the incident and take timely corrective and disciplinary action. However, Plaintiff is informed and believes, and on that basis alleges, that the SCSD never implemented any changes to its chain of command in response to the many instances of excessive force alleged in paragraphs 25-26 to minimize future violations of the General Order and/or the Operations Order at the RCCC. As a direct consequence of this failure, Defendants Officer Dugdale and Does 1-5 were more likely too use excessive force on detainees and inmates, including the use of excessive force against Plaintiff.

22. Defendants Sacramento County and SCSD personnel are obligated to prepare timely, complete, and truthful incident reports about the use of excessive force against persons in custody. Plaintiff is informed and believes, and on that basis alleges, that SCSD officers at the RCCC Jail often filed incomplete and/or

untruthful incident reports about their use of force to avoid being held responsible. Plaintiff is further informed and believes that supervisory officers at the time of the attack on Plaintiff, identified as Does 6-10, including the RCCC jail Captain, the Undersheriff, and the Sheriff, were aware of the lax and/or untruthful officer incident reports about the use of excessive force, but they failed to take any corrective measures to ensure the filing of truthful and complete incident reports. As a direct consequence of this failure, Defendants Officer Dugdale and Does 1-5 were more likely too use excessive force on detainees and inmates, including the use of excessive force against Plaintiff.

23. The SCSD Chain of Command and Supervisory Personnel are obligated to enforce the General Order and the Operations Order by means of sufficiently appropriate disciplinary action against offending officers. Plaintiffs are informed by the many instances and descriptions of disciplinary action as set forth in paragraphs 25-26, that the SCSD Chain of Command and Supervisory Personnel, identified as Does 6-10, failed to implement sufficient and/or appropriate disciplinary actions against the offending officers. As a direct consequence of this failure, RCCC correctional officers did not take the General Order or the Operations Order seriously and Defendants Officer Max Dugdale and Does 1-5 were more likely too use excessive force on detainees and inmates, which led to the use of excessive force against Plaintiff.

24. The obligations and duties set forth in paragraphs 18-23 are hereafter collectively referred to as the “Supervisory Duties”.

**Prior Instances of the Use of Excessive Force Against Detainees/Inmates at SCSD Jails**

25. Defendant Sacramento County and the SCSD have been repeatedly informed during the ten years prior to the incident alleged in this Complaint about instances of inappropriate and excessive force by its jail officer staff at both the Main Jail and the RCCC Jail. These include, but are not limited to the following:

a. In 2013, an officer was involved in an excessive force incident which was recorded on video where inmate Sundy Vongkhamsomphou was was kicked by an officer at the RCCC Jail. Defendant SCSD's investigation "sustained" the excessive force allegation. (SCSD, Professional Standards Division, No. 2013IA-039.) However, the SCSD only imposed a two-day suspension for the officer.

b. On or about August 20, 2013, three SCSD officers were involved in an excessive force incident which was recorded on video where inmate Melanie Orantes was punched in the head by a deputy at the Main Jail. The SCSD investigation "sustained" the excessive force allegation. (SCSD, Professional Standards Division No. 2013IA-043.) However, the only discipline imposed was a "letter of reprimand."

c. On or about April 25, 2014, four officers were involved in an excessive force incident which was recorded on video where inmate Edward Deed was punched and kicked by officers at the Main Jail. Defendant SCSD's investigation "sustained" the excessive force allegation. (SCSD, Professional Standards Division No. 2013IA-032.) However, the only discipline imposed was a "letter of reprimand."

d. On or about May 24, 2014, an officer was involved in an excessive force incident which was recorded on video where inmate Barnard Jones was pepper-sprayed by a deputy at the RCCC Jail. Defendant SCSD's investigation "sustained" the excessive force allegation. (SCSD, Professional Standards Division No. 2014IA-028.) However, the only discipline imposed was a one-step reduction in salary for 26 pay periods.

e. On or about July 25, 2014, three officers were involved in an excessive force incident which was recorded on video where inmate Jordan Fagan was slammed to the ground by deputies at the SCSD Main Jail. Defendant SCSD's investigation "sustained" the excessive force allegation. (SCSD, Professional Standards Division No. 2014IA-041.) However, the only discipline imposed was issuance of a "documented counseling."

f. On or about October 14, 2014, an officer was involved in an excessive force incident which was recorded on video where inmate Andrew Moras was slammed to the ground by a deputy at the SCSD Main Jail. Defendant SCSD's investigation "sustained" the excessive force allegation. (SCSD, Professional Standards Division No. 2014IA-046.) However, the only discipline imposed was a 48hour suspension.

g. On or about January 28, 2015, an officer was involved in an excessive force incident which was recorded on video where inmate Kelly Brown had his head stepped-on by a deputy at the SCSD Main Jail. Defendant SCSD's investigation "sustained" the excessive force allegation. (SCSD, Professional Standards Division

No. 2015IA-005.) However, the only discipline imposed was a letter of reprimand

h. On or about June 5, 2015, six officers were involved in an excessive force incident which was recorded on video where inmate Deshaun Williams was slammed to the ground and had his arms and legs twisted by deputies at the RCCC Jail. Defendant SCSD's investigation "sustained" the excessive force allegation. (SCSD, Professional Standards Division No. 2015IA-025.) However,t the only discipline imposed was issuance of a "documented counseling" and "letter of reprimand."

i. On or about July 6, 2015, an officer was involved in an excessive force incident which was recorded on video where inmate Michael McCormick was grabbed by the neck, choked, and slammed against a wall by a deputy at the SCSD Main Jail. Defendant SCSD's investigation "sustained" the excessive force allegation. (SCSD, Professional Standards Division No. 201PSB-029.) However, the only discipline imposed was issuance of a "letter of reprimand" and loss of "training officer" status.

j. On or about November 21, 2015, an officer was involved in an excessive force incident which was recorded on video where inmate Yasir Mehmood was punched and kicked by an officer while he was defenseless and handcuffed at the SCSD Main Jail. Defendant SCSD's investigation "sustained" the excessive force allegation. (SCSD, Professional Standards Division No. 2015IA-034.) However, the only discipline imposed was issuance of a "letter of reprimand."

k. On or about May 18, 2016, three officers were involved in an excessive

force incident which was recorded on video where inmate Roshawn Jackson was slammed to the ground and had his arms twisted by deputies at the SCSD Main Jail. Defendant SCSD's investigation "sustained" the excessive force allegation. (SCSD, Professional Standards Division No. 201PSB-212.) However, the only discipline imposed was an 80-hour suspension.

l. On or about September 27, 2016, an officer was involved in an excessive force incident which was recorded on video where inmate Monful was tackled to the ground by an officer SCSD Main Jail. Defendant SCSD's investigation "sustained" the excessive force allegation. (SCSD, Professional Standards Division No. 2016PSB-530.) However, the only discipline imposed was a 48-hour suspension.

m. On or about January 8, 2017, officer Daniel Brown was startled by mental health inmate Cantrarutti when he punched his cell door in the Sacramento County Main Jail. Cantrarutti laughed when Daniel Brown become startled. Officer Daniel Brown was embarrassed and retaliated against inmate Cantrarutti, including by removing him from his cell, tackling him to the ground and punching him, along with several other deputies. Defendant SCSD' s investigation "sustained" the excessive force allegation and found that "the use of force should have never occurred in the first place." (SCSD, Professional Standards Division No. 2017PSD-054.) However, the only discipline imposed was a 10-hour suspension.

n. On or about October 21, 2017, Mayco Rodrique was arrested and

booked into the Sacramento County Main Jail by Defendant SCSD officer, including Jarrod Hopeck and Jeffrey Wilson. Officer Hopeck intentionally twisted and broke Rodrique's arm, during the jail intake process. Rodrique was confined to a "sobering" cell and denied him access to medical staff for 20 minutes, while officer Hopeck taunted him through a window on the door. The incidents were captured on the jail's cameras. Defendant SCSD "exonerated" deputy Hopeck. (SCSD Report No. 17303197). However, a civil rights lawsuit was filed: *Rodrigue v. County of Sacramento*, U.S. District Court, Eastern District of California, Case No. 2:17-cv-02698-WBS-EFB. The case was settled pre-trial. As reported in the press, <https://www.sacbee.com/opinion/article238722483.html>, Plaintiff Rodrique obtained through discovery copies of numerous citizen complaints and dispositions from Defendant SCSD.

o. On or about April 11, 2018, officer Daniel Garcia slammed a mentally-ill inmate against the wall causing a cut to the inmate's lip at the SCSD Main Jail. Officer Garcia did not provide medical attention to the inmate for the injury he caused. Defendant SCSD's investigation "sustained" the excessive force allegation, and found that officer Garcia lied in his report and during his interview when he falsely stated that the inmate made a furtive or threatening movement necessitating the assault. (SCSD, Professional Standards Division No. 2018PSD-245.) However, Officer Garcia was only suspended for 10 hours.

p. On or about August 25, 2019, Officer Andrew Seidel and other officer applied a WRAP restraining device to a mentally-ill inmate at the SCSD Main Jail.

After the inmate was taken to the ground in a prone position, Officer Seidel used his knee to strike the inmate in the head, without justification. Officer Seidel prepared a false report with omitted the excessive force used against the inmate. Defendant SCSD' s investigation "sustained" the excessive force allegation. (SCSD, Professional Standards Division No. 2019PSD-0543.) However, Officer Seidel was only given "letter of reprimand."

q. On or about March 16, 2023, Officer Reyes incorrectly attempted to move an inmate into the cell of another mentally-ill inmate who was assigned to total-separation ("T-Sep") housing. The inmate informed Officer Reyes about his housing status, to prevent the inmate from entering his cell and presenting a potential threat. In response, Officer Reyes threatened the inmate, including stating: "You square up on me, we're going to fight"; "Back the fuck up"; "Don't be a bitch now"; and "Don't fucking square up on me, I'll fuck you up." The inmate asked Officer Reyes if he was physically threatening him, to which Antero Reyes responded, "Yeah, let's go." Officer Reyes then assaulted the inmate, including punching him in the face four times in rapid succession. Another officer present during the incident told Officer Reyes to "chill, chill, chill" in an attempt to stop the assault. After the incident, Officer Reyes prepared a false report attempting to justify his use of force and misrepresenting the number of punches he utilized against the inmate. Defendant SCSD's investigation "sustained" the excessive force allegation. (SCSD, Professional Standards Division No. 2023PSD-0170.) However, Officer Reyes was only suspended for 40 hours.

26. Defendant Sacramento County and the SCSD have been sued multiple times under 42 U.S.C. §1983 for the use of excessive force against jail detainees/inmates, including i*nter-alia*:

a. *Cain v. City of Sacramento*, U.S. District Court, Eastern District of California, Case No. 2:17-cv-00848-JAM-DB (action alleging that a sheriff's deputies held the injured plaintiff face-down on the ground while forcibly stripping and verbally abusing him).

b. *McCormack v. County of Sacramento*, U.S. District Court, Eastern District of California, Case No. 2:16-cv-01303-WBS-AC (action alleging that a sheriff's deputy slammed the plaintiff's head into a wall).

c. The Estate of *Marshall Miles v. County of Sacramento*, et al., Case No. 2:19-CV-00910 (action alleging that SCSD Officers Grinder, Lloyd, Higley, and Garside used excessive force on Marshall Miles at the SCSD Mail Jail causing plaintiff to say he couldn't breath. However, the Officers ignored Miles' calls for relief. As a result of the excessive force, Mile's sustained fatal injuries and died at the jail from the oxygen deprivation that resulted from the excessive force.)

d. *Predybaylo v. Sacramento County, et al.*, 2:19-CV-01243-MCE-CKD ("*Predybaylo*"). In *Predybaylo*, a detainee was stripped searched, and then, even though the jail officers admitted that he never physically resisted and had complied with their orders, picked the detainee up by his hands being held behind his back and his two legs, and then dropped Mr. Predybaylo face first onto the concrete floor. Mr. Predybaylo suffered a concussion, bruises, and abrasions. The Ninth Circuit

Court of Appeal held that the force was excessive. *Predybaylo v. Sacramento County, et al.*, Ninth Circuit Court of Appeals, Case No. 22-15972, Memorandum decision August 10, 2023.

## V.
## EXHAUSTION

27. On or about November 14, 2024, Plaintiff filed a claim against the County of Sacramento concerning the allegations in this action.

28. Plaintiff's claim was rejected by the County of Sacramento on or about December 29, 2024, as a matter of law. See Cal. Gov. Code § 912.4(c).

VI.
FEDERAL CLAIMS

FIRST CAUSE OF ACTION

Defendants SCSD Officers Dugdale and Does 1-5

Individual Liability for Violation of Plaintiff's Constitutional Rights Under 42 U.S.C. §1983
(Unlawful Use of Force )

29. Plaintiff hereby incorporates by reference paragraphs 1 through 28, inclusive, as though set forth fully herein.

30. Defendant Officers Dugdale and Does 1 through 5 committed the acts and omissions as alleged in paragraphs 8-17 that constituted the use of excessive force upon Plaintiff. These wrongful acts and omissions were the direct and proximate causes of, or were there moving force behind, the violation of Plaintiff's right to be free from unreasonable searches and seizures under the Fourth Amendment (as incorporated through the Fourteenth Amendment) to the U.S. Constitution.

31. The foregoing wrongful acts and omissions of Defendant Officers Dugdale and Does 1 through 5 were done under the color of state law.

32. As the result of the foregoing wrongful conduct of Defendant Officers Dugdale and Does 1 through 5, Plaintiff is entitled to recover general, consequential, and special damages in excess of $500,000, according to proof, including, but not limited to the: (a) physical pain and suffering from the injuries to his body; (b) costs for medical and dental care for his injuries; and (c) severe emotional and mental distress caused by the use of excessive force and from the resulting physical injuries

to his body, including feelings of helplessness, anxiety, humiliation, and the loss of a sense of security, dignity, and pride.

33. The foregoing wrongful acts and omissions of Defendant Officers Dugdale and Does 1 through 5, were committed with malice toward, and callous disregard of, Plaintiff that was despicable. As a result, punitive damages should be awarded against these Defendants.

34. As a direct and proximate result of the foregoing conduct of Defendant Officers Dugdale and Does 1 through 5, Plaintiff has been forced to file this action under 42 U.S.C. §1983, and is entitled to recover his attorney's fees and costs under 42 U.S.C. §1988.

## SECOND CAUSE OF ACTION

**Defendant Sacramento County and the SCSD**
**Municipal Liability for Violation of Plaintiff‘s Constitutional Rights**

**(Deliberate and Callous Disregard for Repeated Acts of Excessive Force)**

35. Plaintiff hereby incorporates by reference paragraphs 1-28, inclusive, as though set forth fully herein.

36. Defendant Sacramento County and the SCSD have failed to adequately train its jail officers in the PPPs, in particular, the General Order and the Operations Order, regarding the use of excessive force against persons in custody at its Main and RCCC jails.

37. Defendant Sacramento County and the SCSD have failed to adequately monitor or enforce the PPPs, in particular, the General Order and the Operations

Order, regarding the use of excessive force against persons in custody at its Main and RCCC jails.

38. Defendants Sacramento County and the SCSD have failed to adequately supervise its personnel's implementation of the PPPs, in particular, the General Order and the Operations Order, regarding the use of excessive force against persons in custody at its Main and RCCC jails.

39. Defendant Sacramento County and the SCSD have allowed a failure in the "Chain of Command" for SCSD jail officers such that reports of incidents involving the use of excessive force are not being properly or timely investigated and transmitted up the chain of command so that senior SCSD staff can take timely corrective action.

40. Defendant Sacramento County and the SCSD jail officers and their supervisors are not timely preparing complete and truthful reports about the use of excessive force against persons in custody.

41. Defendant Sacramento County and the SCSD Chain of Command and Supervisory Personnel failed to implement sufficient and/or appropriate disciplinary actions against the offending officers.

42. It was known and/or obvious to Defendants Sacramento County and the SCSD that the acts and omissions described in paragraphs 18-23 and 36-41 would be likely to cause serious violation of the constitutional rights of persons in custody.

43. The acts and omissions in paragraphs 18-23 and 36-41 were done under the color of state law and they were the direct and proximate cause of the violation of

the constitutional rights of Plaintiff as alleged in paragraphs 8-17. These acts and omissions continued for at least a year prior to the institution of this action and Plaintiff is informed and believes, and on that basis alleges, that these acts and omissions continue until the present time. As a consequence of the continuing nature of the acts and omissions of Defendant Sacramento County and the SCSD alleged in paragraphs 18-23 and 36-41, Defendant Sacramento County has been deliberately indifferent to, and acted with a callous disregard for, the constitutional rights of inmates in the Sacramento County Jails.

44. As a direct and proximate result of the wrongful acts and omissions of Defendant Sacramento County and the SCSD as set forth above, Plaintiff has sustained general, consequential, and special damages in excess of $500,000, according to proof, including, but not limited to the: (a) physical pain and suffering from the injuries to his body; (b) costs for medical and dental care for his injuries; and (c) severe emotional and mental distress caused by the use of excessive force and from the resulting physical injuries to his body, including feelings of helplessness, anxiety, humiliation, and the loss of a sense of security, dignity, and pride.

45. As a direct and proximate result of the foregoing conduct of Defendant Sacramento County, Plaintiff has been forced to file this action under 42 U.S.C. §1983, and is entitled to recover his attorney's fees and costs under 42 U.S.C. §1988.

THIRD CAUSE OF ACTION

Defendant SCSD Officers Does 6-10

Individual Liability for Violation of Plaintiff's
Constitutional Rights Under 42 U.S.C. §1983

(Failure to Fulfill Supervisory Duties Regarding the Use of Force)

46. Plaintiff hereby incorporates by reference paragraphs 1-28, inclusive, as though set forth fully herein.

47. Defendant SCSD Officers Does 6-10 failed to adequately train subordinate SCSD Officers in the PPPs, in particular, the General Order and the Operations Order, regarding the use of force against persons in custody at its Main and RCCC jails.

48. Defendant SCSD Officers Does 6-10 failed to adequately monitor or enforce the PPPs, in particular, the use of force against persons in custody at its Main and RCCC jails to verify compliance with the General Order and the Operations Order.

49. Defendant SCSD Officers Does 6-10 failed to adequately supervise subordinate SCSD Officers in the use of force against persons in custody at its Main and RCCC jails as prescribed by the PPPs, in particular, the General Order and the Operations Order.

50. It was known and/or obvious to Defendant SCSD Officers Does 6-10 that the foregoing acts and omissions would be likely to cause the excessive use of force by inferior offices that result in serious violation of the constitutional rights of persons in custody.

51. The acts and omissions were done under the color of state law.

52. As a direct and proximate result of the foregoing wrongful acts and omissions of Defendant SCSD Officers Does 6-10, Plaintiff has sustained general, consequential, and special damages in excess of $500,000, according to proof, including, but not limited to the: (a) physical pain and suffering from the injuries to his body; (b) costs for medical and dental care for his injuries; and (c) severe emotional and mental distress caused by the use of excessive force and from the resulting physical injuries to his body, including feelings of helplessness, anxiety, humiliation, and the loss of a sense of security, dignity, and pride.

53. The foregoing wrongful acts and omissions of Defendant Officers Does 6-10 were committed with malice toward, and callous disregard of, Plaintiff that was despicable. As a result, punitive damages should be awarded against these Defendants.

54. As a direct and proximate result of the foregoing conduct of Defendant Sacramento County, Plaintiff has been forced to file this action under 42 U.S.C. §1983, and is entitled to recover his attorney's fees and costs under 42 U.S.C. §1988.

## VII
## STATE CLAIMS

### FOURTH CAUSE OF ACTION

**Defendant Officers Dugdale and Does 1-5**

**Bane Act (Cal. Civ. Code § 52.1)**

55. The allegations of the preceding paragraphs 1 to 28 are re-alleged and incorporated herein, to the extent relevant, as if fully set forth in this claim.

56. Defendant Officers Max Dugdale and Does 1 through 5, acting or purporting to act in the performance of their official duties as law enforcement officers, used threats, intimidation, coercion, and unnecessary and excessive force against Plaintiff as described in paragraphs 8-17 to interfere with Plaintiff's exercise and enjoyment of the rights secured by both the U.S. Constitution and the California Constitution.

57. As the result of the foregoing wrongful conduct of Defendant Officers Dugdale and Does 1 through 5, Plaintiff is entitled to recover general and compensatory damages in excess of $500,000, according to proof, including, but not limited to the: (a) physical pain and suffering from the injuries to his body; (b) costs for medical and dental care for his injuries; and (c) severe emotional and mental distress caused by the use of excessive force and from the resulting physical injuries to his body, including feelings of helplessness, anxiety, humiliation, and the loss of a sense of security, dignity, and pride.

58. Pursuant to California Civil Code §52(a) and §52.1(b), Plaintiff is entitled to

treble the amount of general, consequential, and special damages that are proven. In addition, Plaintiff is entitled to recover his costs and attorney's fees under Civil Code § 52(b) and § 52.1(h).

59. The foregoing wrongful acts and omissions of Defendant Officers Dugdale and Does 1 through 5 were committed with malice toward, and callous disregard of, Plaintiff that was despicable. As a result, punitive damages should be awarded against these Defendants.

## FIFTH CAUSE OF ACTION

## Defendant Officers Dugdale and Does 1-5

## ASSAULT

60. The allegations of the preceding paragraphs 1 to 28 are re-alleged and incorporated herein, to the extent relevant, as if fully set forth in this claim.

61. Plaintiff alleges that Defendant Officers Max Dugdale and Does 1 through 5, without the consent of Plaintiff and acting with the intent to cause harmful contact upon him, did threaten to touch Plaintiff in a harmful and offensive manner.

62. Plaintiff reasonably believed that Defendant Officers Dugdale and Does 1 through 5 were capable and poised to carry out their threat to physically harm Plaintiff.

63. As the direct result of Defendant Officers Max Dugdale and Does 1 through 5 assault upon Plaintiff, Plaintiff has been harmed and is entitled to recover general and compensatory damages in excess of $500,000, according to proof, including, but not limited to the: (a) physical pain and suffering from the injuries to his body; (b)

costs for medical and dental care for his injuries; and (c) severe emotional and mental distress caused by the use of excessive force and from the resulting physical injuries to his body, including feelings of helplessness, anxiety, humiliation, and the loss of a sense of security, dignity, and pride.

64. The foregoing wrongful acts and omissions of Defendant Officers Max Dugdale and Does 1 through 5 were committed with malice toward, and callous disregard of, Plaintiff that was despicable. As a result, punitive damages should be awarded against these Defendants.

**SIXTH CAUSE OF ACTION**

**Defendant Officers Dugdale and Does 1-5**

**BATTERY**

65. Plaintiff hereby incorporates by reference paragraphs 1 through 28, inclusive, as though set forth fully herein.

66. Plaintiff alleges that Defendant Officers Max Dugdale and Does 1 through 5, without the consent of Plaintiff and acting with the intent to cause harmful contact upon Plaintiff, did touch Plaintiff in a harmful and offensive manner.

67. Plaintiff was physically and psychologically harmed by the conduct of Defendant Officers Dugdale and Does 1 through 5.

68. A reasonable person in Plaintiff's situation would have been offended and harmed by the touching of Defendant Officers Max Dugdale and Does 1 through 5.

69. As the direct result of the battery of Plaintiff by Defendant Officers Max Dugdale and Does 1 through 5, Plaintiff has been harmed and is entitled to recover

general and compensatory damages in excess of $500,000, according to proof, including, but not limited to the: (a) physical pain and suffering from the injuries to his body; (b) costs for medical and dental care for his injuries; and (c) severe emotional and mental distress caused by the use of excessive force and from the resulting physical injuries to his body, including feelings of helplessness, anxiety, humiliation, and the loss of a sense of security, dignity, and pride.

70. The foregoing wrongful acts and omissions of Defendant Officers Max Dugdale and Does 1 through 5 were committed with malice that was despicable and done with callous disregard for Plaintiff. As a result, punitive damages should be awarded against these Defendants.

## SEVENTH CAUSE OF ACTION

### Defendant Sacramento County

### *RESPONDEAT SUPERIOR* LIABILITY

71. Plaintiff hereby incorporates by reference paragraphs 1 through 28, inclusive, as though set forth fully herein.

72. Plaintiff was harmed by the wrongful conduct of Defendant Officers Max Dugdale and Does 1 through 10 as alleged in paragraphs 8-17 and the First and Third through Sixth Causes of Action.

73. Plaintiff further alleges that Defendant Sacramento County is vicariously liable, through the principles of *respondeat superior* and pursuant to Cal. Gov. Code §§ 815.2(a), 815.6, 820(a), and Civil Code §52.1 for injuries proximately caused by the wrongful acts and omissions of its employees acting within the scope of their

employment, including the acts and omissions of Defendant Officers Max Dugdale and Does 1 through 10 as alleged in paragraphs 8-17 and the First and Third through Sixth Causes of Action.

74. As the direct result of the wrongful acts and omissions of Defendant Officers Max Dugdale and Does 1 through 5, Plaintiff has been harmed and is entitled to recover general and compensatory damages in excess of $500,000, according to proof, including, but not limited to the: (a) physical pain and suffering from the injuries to his body; (b) costs for medical and dental care for his injuries; and (c) severe emotional and mental distress caused by the use of excessive force and from the resulting physical injuries to his body, including feelings of helplessness, anxiety, humiliation, and the loss of a sense of security, dignity, and pride.

## PRAYER

**Wherefore**, Plaintiff prays for judgment against Defendants as follows:

1. For general, consequential, and special damages in the sum set forth in Counts 1-7, according to proof;

2. For punitive damages in a sum according to proof in Counts 1, 3-6;

3. For reasonable attorney's fees and costs pursuant to 42 U.S.C. §1988 in Counts 1-3;

4. For reasonable attorney's fees and costs pursuant to California Civil Code §51 and §52 in Count 4;

5. For treble damages (3x consequential) in Count 4;

6. For cost of suit herein incurred for all counts; and

7. For such other and further relief as the Court deems just and proper.

Dated: July 16, 2025

Respectfully,

By: /s/ Patrick H. Dwyer
Patrick H. Dwyer, counsel for
Plaintiff Aram Mkrtchyan

## JURY TRIAL DEMAND

A Jury Trial is demanded on behalf of Plaintiff Aram Mkrtchyan.

Dated: July 16, 2025

Respectfully Submitted,

By: /s/_Patrick H. Dwyer
Patrick H. Dwyer, counsel for
Plaintiff Aram Mkrtchyan

# EXHIBIT 1

SHERIFF'S DEPARTMENT COUNTY OF SACRAMENTO

# GENERAL ORDER

## Use of Force Policy

The purpose of this General Order is to provide officers with guidelines for the reasonable use of force. This Order recognizes the use of force is a serious responsibility and requires constant evaluation.

I. General

The Sacramento County Sheriff's Department recognizes and respects the value of all human life. Officers are involved in numerous encounters daily with a variety of people and may be called upon to use reasonable force in carrying out their duties. Officers must understand the limitations of their authority with respect to overcoming resistance from those with whom they come in official contact. Vesting officers with the authority to use reasonable force and protect the public welfare requires a careful balancing of all human interests.

California Penal Code Section 835a: Any peace officer who has reasonable cause to believe that the person to be arrested has committed a public offense may use reasonable force to affect the arrest, to prevent escape, or to overcome resistance. A peace officer who makes or attempts to make an arrest need not retreat or desist from his/her efforts by reason of resistance or threatened resistance of the person being arrested; nor shall such officer be deemed an aggressor or lose his/her right to self-defense by the use of reasonable force to effect the arrest or to prevent escape or to overcome resistance.

II. Policy

A. It is the policy of this Department that officers shall use only that force which is reasonable, given the facts and circumstances perceived by the officer at the time of the event, to effectively bring an incident under control. The reasonableness of the force used must be judged from the perspective of a reasonable officer on the scene at the time of the incident.

1. Officers may use force in the performance of their duties when they reasonably believe any of the following conditions exist:

a. In self-defense;

b. In defense of another person;

c. To prevent the commission of a public offense;

d. To effect a lawful arrest, prevent escape, or overcome resistance;

e. To protect a person from injuring themselves;

f. To prevent the destruction of evidence.

2. Officers may use deadly force in the performance of their duties when the following conditions exist:

a. In self-defense when the officer has reasonable cause to believe that there is imminent danger of death or great bodily injury;

b. In defense of another person when the officer has reasonable cause to believe that the other person is in imminent danger of death or great bodily injury (same as GO 2/05);

c. To effect an arrest, prevent an escape, or recapture an escapee when the officer has probable cause to believe that the suspect has committed or attempted to commit a violent felony involving the threat of death or great bodily injury and when the officer has reasonable cause to believe that the felony suspect to be apprehended may cause death or great bodily injury to an officer or another person should the suspect escape;

d. In each situation above, where feasible, an officer should issue a verbal warning prior to initiating deadly force.

3. The objective in applying reasonable force is to control persons and incidents thereby minimizing injury to all persons involved. Nothing in this policy requires an officer to actually sustain physical injury before applying reasonable force.

III. Use of Force Options

A. Examples of force options are provided to officers in Appendix A and do not imply any continuum of force. These examples are not exhaustive nor are they intended to limit an officer's reasonable response to a perceived threat (see Appendix A).

IV. Reporting

A. Any use of force which results in an apparent or reported injury shall be documented utilizing an Automated Field Reporting (AFR) incident report which may include, but is not limited to, a crime / arrest report, a casualty report, a 5150 report, or an information report.

B. Any *Application of Force* or *Use of Deadly Force*, as described in sections II.B and II.C of Appendix A of this order, against any person by an employee of this Department (sworn or non-sworn) shall be documented utilizing an AFR incident report which may include, but is not limited to, a crime / arrest report, a casualty report, a 5150 report, or an information report.

1. Exception- AFR documentation is not required for the use of control / compliance holds, handcuffs, shackles, or other restraint devices when used to restrain persons for security or transportation purposes unless the application resulted in an apparent or reported injury.

2. In instances where officers used firearms, Electronic Control Devices, and/or 40mm type launchers, a Weapons Discharge Form shall be completed no later than the end of watch.

3. In no circumstance will a standalone supplemental report be sufficient to document a Use of Force, an Application of Force, or Use of Deadly Force.

C. The complete use of force report, whether an incident, pursuit, casualty, or crime report, should include, but is not limited to, the following:

1. Reason for response or enforcement activity;

2. Witness / suspect behavior reported prior to and upon arrival of officers;

3. Suspect actions and statements prior to arrest / use of force;

4. Discrepancies in physical stature; i.e., height / weight, appearance of being under the influence of alcohol or drugs, demonstrated fighting skill;

5. Type and amount of resistance offered;

6. Type and amount of force used to overcome resistance;

7. Medical treatment requested and by whom provided;

8. Time of supervisory notification and to whom;

9. Third party witness statements;

10. Evidence collected, to include description of injuries if applicable.

D. Supervisory notification shall be made as soon as practical following the application of force which, at the time, appears likely to have caused

physical injury. Medical assistance for any injured persons shall be obtained as soon as possible.

V. Debriefing

A. Management and / or supervisory personnel shall plan and facilitate debriefings of any use of force incidents which result in serious bodily injury or death to citizens, officers, or suspects. The debriefing shall include personnel involved in the incident and any other concerned personnel at the discretion of the coordinating manager / supervisor. Debriefings shall occur as soon as possible after the incident, but no later than 30 days afterward.

## ATTACHMENTS:

Attachment A 2-11 (Rev 8-17) Appendix A-Examples

# EXHIBIT 2

SHERIFF'S DEPARTMENT COUNTY OF SACRAMENTO

# OPERATIONS ORDER

## Use of Force

The purpose of this Order is to provide policy and procedures for the Use of Force at the **Main Jail** and the **Rio Cosumnes Correctional Center (RCCC).**

I. Policy

Custody staff shall comply with General Order 2/11 (Use of Force Policy) regarding the use of force. This policy is to be used in conjunction with, but does not supersede, General Order 2/11.

Officers shall use only that force which is reasonable, given the facts and circumstances perceived by the officer at the time of the event, to effectively bring an incident under control. The reasonableness of the force used must be judged from the perspective of a reasonable officer on the scene at the time of the incident.

The application of force shall cease when control of a prisoner or situation is achieved and shall not be used as a form of punishment. The objective in applying reasonable force is to control persons and incidents thereby minimizing injury to all persons involved.

II. Alternative Resolutions in Lieu of Force/De-escalation

A. Staff should be cognizant of the unique environment in a correctional setting. Each situation shall be evaluated to determine the urgency of enforcement action. In situations where an immediate response may escalate or aggravate the situation, officers should consider the containment of the event as a tactic.

B. Further, staff shall appropriately de-escalate the level of force in response to the suspect's level of compliance. Possible alternative resolutions in lieu of the application of force include:

1. Containment of the situation

2. Shutting off utilities (Water, Electricity)

3. Negotiation

4. Waiting situation out until suspect(s) voluntarily comply

III. Authorization and Deployment of Tactical Weapons

A. With the exception of OC spray and Tasers, all tactical weapons (37mm/40mm Launchers, Pepperball, Sting Ball devices, Flashbang devices, or similar combustible-fueled devices) are to be deployed and used only with the prior approval of the shift Watch Commander, or in a bona fide emergency situation such as a riot, attempt escape, hostage taking, or other exigent circumstance in accordance with Operations Order 2-04-Weapons, Tactical Weapons, and Specialized Equipment.

1. Deployment shall be defined as removal of the weapon and/or device from its place of storage, with the exception of removal for purpose of routine inspection, training, maintenance, or inventory.

2. Tactical Weapons are defined as weapons, devices, tools, and other instruments used by officers to assist in gaining the compliance of non-compliant, assaultive, or self-injurious individuals in situations where the application of force is deemed necessary to bring a resolution to the incident.

IV. Recording, Reporting and Documentation

A. Officers shall make every attempt to video record the suspect's actions prior to a planned application of force. Officers shall endeavor to record the specific actions, behavior, or threats used to justify the use of force. Staff shall also endeavor to record any staff member's directions and requests for compliance. The video recording will be logged and stored in the video library for thirty-six (36) months.

B. Any use of force which results in an apparent or reported injury shall be documented utilizing the Automated Field Reporting (AFR) system on a crime/arrest report, a casualty report, a 5150 report, or an information report – whichever is applicable.

1. In no circumstance will a stand-alone supplemental report be sufficient to document a use of force.

C. Any *Application of Force* or *Use of Deadly Force*, as described in sections II.B and II.C of Appendix A of General Order 2/11, against any person by an employee of this Department (sworn or non-sworn) shall be documented utilizing an AFR incident report which may include, but is not limited to, a crime/arrest report, a casualty report, a 5150 report, or an information report.

1. Exception- AFR documentation is not required for the use of control/compliance holds, handcuffs, shackles, or other restraint devices when used to restrain persons for security or transportation purposes unless the application resulted in an apparent or reported injury.

2. In instances where officers used firearms, Electronic Control Devices, and/or 40mm type launchers, a Weapons Discharge Form shall be completed no later than the end of watch.

3. In no circumstance will a stand-alone supplemental report be sufficient to document a use of force, an Application of Force, or Use of Deadly Force.

D. The use of control holds on resistive, combative, or noncompliant inmates that does not result in a visible or reported injury, shall be documented using the Jail Inmate Management System (JIMS) Incident Report (PF10). A Custody Log Book entry and a Watch Summary Log are also required.

E. Medical assistance for any injured persons shall be obtained as soon as possible. Prisoners exposed to certain tactical weapons may require evaluation by medical personnel in accordance with Operations Order 2-04, Weapons, Tactical Weapons, and Specialized Equipment.

F. Supervisory notification shall be made to an on-duty supervisor as soon as practical following the application of force; in any instance, no later than the end of watch.

G. The sergeant supervising the incident shall direct the completion of any required reports. The required reports minimally include:

1. A **Housing Unit Log Book** entry referencing the incident.

2. An **Inmate Incident Report (PF-10**). The officer will note in the report if the incident was video recorded and if not, the circumstances preventing the video recording.

3. An on-line **Watch Summary Log**.

H. Additional documentation may be necessary and may include:

1. An **AFR Incident Report**.

2. A **"Custody Log"** form.

3. A "**Restraint Extension"** Inter-departmental Correspondence (IDC).

4. **Weapons Discharge Report** Incident (available on SSDWeb)

I. The complete use of force report shall include, but is not limited to, the following:

1. Reason for response or enforcement activity;

2. Witness/suspect's behavior upon arrival of officers;

3. Suspect's actions and statements prior to the arrest/use of force;

4. Differences in physical odds; (i.e., height/weight, alcohol/drug intoxication, demonstrated fighting skill);

5. Type and amount of resistance offered;

6. Type and amount of force used to overcome resistance;

7. Medical treatment requested and by whom provided;

8. Time of supervisory notification and to whom;

9. Third party witness statements;

10. Evidence collected, including description of injuries.

J. The supervisor of the incident shall ensure the Watch Commander receives a copy of all pertinent reports. The report package shall include:

1. The Use of Force Routing Sheet.

2. The Custody Log Sheet.

3. The PF-10 Incident Report and any Crime/Casualty/Incident Reports.

4. The Watch Summary Log.

5. The Restraint Extension IDC, Weapons Discharge Report if applicable.

K. The original package shall be placed in the prisoner's custody file. A copy will be forwarded to the assistant division commander for review and a copy shall be maintained by the division administrative sergeant or designee.

L. The Watch Commander shall review the use of force, including any available video.

1. The Watch Commander shall forward all documentation and available video for the use of force to the assistant division commander by the end of watch.

M. The supervising sergeant shall ensure a Classification Officer is notified of the incident and if a change in housing location for the prisoner is needed.

N. The supervisor or designee should conduct a debriefing session with involved staff as soon as possible.

**Appendices:** None

**Related Orders:** General Orders: 1/34, Reports, 2/11, Use of Force Policy
Operations Orders: 1/15, Reporting of Incidents and Crimes, 2/02, Use of Restraints, 2/03, Use of the Prostraint Chair; 2/04, Weapons, Tactical Weapons, and Specialized Equipment; 2/05, CERT and Cell Extraction Procedures

**References:** Title 15, Section 1058