UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARAM MKRTCHYAN,<br><br>        Plaintiff,<br><br>        v.<br><br>SACRAMENTO COUNTY, CALIFORNIA et al.,<br><br>        Defendants. | No. 2:25-cv-01405-DJC-CSK<br><br><br>ORDER |

      Pending before the Court is Defendant's Motion to Dismiss Plaintiff's second cause of action for *Monell* liability in the First Amended Complaint. Defendant alleges that Plaintiff's allegations are too conclusory and fail to state a theory of liability under *Monell*. Plaintiff argues that the allegations are sufficient and requests to have discovery proceed should the Court grant the Motion to Dismiss. For the reasons below the Court DENIES the Motion to Dismiss.

## BACKGROUND

      In November 2024, Plaintiff Aram Mkrtchyan was seated on his bunk in the G Dorm of the Rio Cosumnes Correctional Center ("RCCC") playing video games with his headphones on. (FAC (ECF No. 10) ¶¶ 8, 10.) Plaintiff was in custody at the RCCC,

1

which is staffed and operated by Defendant Sacramento County's Sheriff's Department ("SCSD") and is where Defendant Deputy Mark Dugdale was working. (*Id.* ¶¶ 5,6,8.) While playing, Plaintiff experienced a setback in the game and lost all of the electronic coins he had collected over about 20 minutes of play. (*Id.* ¶ 9.) Plaintiff exclaimed "You son of a bitch," in a tone of voice louder than usual because of his wearing headphones. (*Id.*) Deputy Dugdale, who was doing a "count time" for inmates, heard the expletive and told Plaintiff to walk to the area outside the control center for the G Dorm and sit on a bench. (*Id.* ¶¶ 10,11.) Plaintiff was left to sit on the bench for twenty to thirty minutes and attempted to apologize and explain that the phrase was not directed toward Deputy Dugdale. (*Id.* ¶¶ 11,12.) Deputy Dugdale told Plaintiff he would be "rolled up" that night, meaning he would be transferred to higher security. (*Id.*) Plaintiff also alleges that while he was waiting on the bench, he asked to get a sweater or blanket while he waited but was denied permission and instead sat in a t-shirt. (*Id.* ¶ 13.)

At the bench, Deputy Dugdale approached Plaintiff from behind, told Plaintiff to get ready to be cuffed, and Plaintiff stood up with his hands behind his back. (*Id.* ¶ 14.) Without warning, Plaintiff was then attacked by Deputy Dugdale and another SCSD officer who shoved him into a fence and threw him on the ground, at which point he lost consciousness for up to thirty seconds. (*Id.*) Sometime during the attack, Plaintiff heard the officers call for backup and two other officers joined the assault on Plaintiff. (*Id.* ¶¶ 14,15.) Plaintiff alleges that officers told him to "stop resisting" but Plaintiff had not resisted in any manner. (*Id.* ¶ 15.) Plaintiff experienced several injuries following the incident: including having two teeth knocked loose and losing one tooth completely, suffering significant cuts and bruises, and being struck in his testicles. (*Id.*) Two of the officers, including Deputy Dugdale, then took Plaintiff to the medical unit where he had his wounds cleaned. (*Id.* ¶ 16.) Plaintiff was then taken to the maximum-security area and received a disciplinary write up for the beating based on what Plaintiff contends were fabricated charges. (*Id.* ¶ 16,17.)

Plaintiff now brings suit against Defendant Sacramento County alleging violations of various state and federal laws. Defendant brings the instant Motion to Dismiss Plaintiff's second cause of action alleging *Monell* liability. (MTD (ECF No. 14).) Plaintiff issued an Opposition (Opp'n (ECF No. 17),) to the Motion and Defendant Replied (Reply (ECF No. 18)). The matter was submitted without oral argument under Local Rule 230(g). (ECF No. 20.)

## LEGAL STANDARD

A party may move to dismiss for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). The motion may be granted only if "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.,* 521 F.3d 1097, 1104 (9th Cir. 2008). While the court assumes all factual allegations are true and construes "them in the light most favorable to the nonmoving party," *Steinle v. City & Cnty. of S.F.,* 919 F.3d 1154, 1160 (9th Cir. 2019), if the complaint's allegations do not "plausibly give rise to an entitlement to relief" the motion must be granted. *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009).

A complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief [,]" Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). However, this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible. *Iqbal,* 556 U.S. at 678. In the same vein, conclusory or formulaic recitations of elements do not alone suffice. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This evaluation of plausibility is a context-specific task drawing on "judicial experience and common sense." *Id.* at 679.

These same standards apply to claims against municipal governments under Section 1983. *See A.E. ex rel. Hernandez v. Cnty. of Tulare,* 666 F.3d 631, 637 (9th Cir.

2012). A plaintiff's allegations "may not simply recite the elements" of a claim under *Monell*. *Id.* (quoting *Starr v. Baca*, 651 F.3d 1202, 1216 (9th Cir. 2011)). Rather, the complaint "must contain sufficient allegations of underlying facts to give fair notice" of the claims and allow the municipal government "to defend itself effectively." *Id.* (quoting *Starr*, 652 F.3d at 1216). The plaintiff's allegations "must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.* (quoting *Starr*, 652 F.3d at 1216).

## DISCUSSION

The Supreme Court held in *Monell v. Department of Social Services* that local governments may be held liable under section 1983 for wrongs done by the local government itself. 436 U.S. 658, 690 (1978). A municipality or other local government entity is subject to *Monell* liability when that government, "under color of some official policy, 'causes' an employee to violate another's constitutional rights." *Id.* at 692; *see Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citation omitted) ("A government entity may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights."). To establish liability for a government entity under *Monell,* a plaintiff must prove "(1) that [the plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation.'" *Dougherty,* 654 F.3d at 900 (citations omitted).

*Monell* liability may be established even where the municipality does not expressly adopt the alleged policy. Along with an official policy, the Ninth Circuit has recognized three other theories for establishing liability under *Monell*: a pervasive practice or custom; a failure to train, supervise, or discipline; or a decision or act by a final policymaker. *Horton by Horton v. City of Santa Maria,* 915 F.3d 592, 602–03 (9th

Cir. 2019). A municipality, however, cannot be held liable solely for the purported constitutional violations of its employees, "or, in other words, a municipality cannot be held liable under [section] 1983 on a *respondeat superior* theory." *Monell,* 436 U.S. at 691. The municipality itself must have acted through an official municipal policy or custom. *Id.* at 694.

### I.   **Custom, Policy or Practice**

Defendant contends that Plaintiff has failed to demonstrate a pervasive custom or practice because the prior incidents and cases Plaintiff references do not sufficiently illustrate a widespread, permanent pattern and do not identify how Defendant's challenged practices are deficient. (MTD at 6–9.) Plaintiff argues that the prior incidents included the FAC plausibly demonstrate a problem with the policy, practices or procedures for the use of force by jail officers. (Opp'n at 5–6.)

"[A] custom or practice can be inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." *Hunter v. County of Sacramento,* 652 F.3d 1225, 1233 (9th Cir. 2011) (internal quotations and citations omitted). To show a violation by practice or custom, the plaintiff must show more than "isolated or sporadic events." *Trevino v. Gates,* 99 F.3d 911, 918 (9th Cir. 1996). Rather, liability "must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Id.* (citations omitted). While "[i]t is difficult to discern from the caselaw the quantum of allegations needed to survive a motion to dismiss a pattern and practice claim," *Gonzalez v. County of Merced*, 289 F. Supp. 3d 1094, 1099 (E.D. Cal. 2017), "where more than a few incidents are alleged, the determination appears to require a fully-developed factual record," *Lemus v. County of Merced*, No. 1:15-cv-00359-MCE-EPG, 2016 WL 2930523, at *4 (E.D. Cal. May 19, 2016), *aff'd*, 711 Fed. App'x 859 (9th Cir. 2017).

As an initial matter, Plaintiff concedes that Defendant "had a facially constitutional policy regarding the use of excessive force in its jails." (Opp'n at 6.)

5

Plaintiff points to the General Order on the Use of Force and the Operations Order regarding the use of force at the RCCC. Even with such policies in place, Plaintiff contends that there was a pattern of excessive force by jail officers against inmates because such policies were not followed. *See Est. of Osuna v. County of Stanislaus,* 392 F. Supp. 3d 1162, 1174–75 (E.D. Cal. 2019) ("[A]lthough factual allegations of the complaint must plausibly allege the existence of a policy or custom that was the moving force behind the constitutional violation at issue, the policy or custom itself need only be alleged in general terms."); *Adams v. City of Redding,* No. 2:20-cv-01610-TLN-DMC, 2022 WL 16964025, at *3 (E.D. Cal. Nov. 16, 2022) (finding that where Plaintiff alleged Defendant's specific policies were wrongfully ignored by the officers, fair notice to Defendant existed).

To support the argument that the practice was longstanding, Plaintiff includes seventeen prior incidents of excessive force used by SCSD officers against inmates in the Main Jail and RCCC. (FAC ¶¶ 25(a)–(q).) Plaintiff's injury occurred in the RCCC, and only three of the cited incidents occurred there while the rest occurred in the Main Jail. (FAC ¶¶ 25(a),(d),(h).) That said, given Plaintiff's allegation that Defendant operates and staffs both sites, the Court does not find that distinction to be dispositive. Reviewing the incidents, nearly all involved SCSD "sustain[ing]" a finding of excessive force by an officer against an inmate or detainee.[1] Each incident involved some form of "nominal" discipline. (Opp'n at 2.) The incidents took place between 2013 and 2023. The types of force used by the SCSD officers resemble the type of force alleged to have been used against Plaintiff in fourteen of the cited incidents, with the most recent one alleged to have occurred in March 2023, which was a year and half before the events involving Plaintiff.[2]

---

[1] Plaintiff includes an incident where the Defendant officer was improperly deemed "exonerated" for a use of force during a jail intake process. A civil rights lawsuit was then filed and the case settled pre-trial. However, the Court does not consider this incident as the factual circumstances differ from the incident at hand. (FAC ¶ 25(n).)

[2] Plaintiff also cites to four cases where Defendant was sued under section 1983 for the use of excessive force against jail detainees and inmates. Although these cases involve the same Defendant, the Plaintiff

6

Contrary to the Defendant's argument that the incidents are too "isolated" and "sporadic," the events appear to demonstrate a continuous pattern of excessive force used by officers over the course of a decade.  The Court finds that Plaintiff has plausibly alleged the existence of a claim against Defendant for an unconstitutional custom or policy of excessive force by jail officers against inmates or detainees.  *See Lemus,* 2016 WL 2930523, at *4 ("Where more than a few incidents are alleged, the determination appears to require a fully-developed factual record.").

### II. Failure to Train

Next, Defendant argues that the failure to train, supervise and discipline theory fails because no facts allege that the SCSD failed to train its correctional officers, or that the alleged failure was a cause of the alleged constitutional violation. (MTD at 9–11.)  Defendant also contends that Plaintiff has not demonstrated deliberate indifference. (*Id.* at 11.)  In the Opposition, Plaintiff points to several allegations that he claims support the failure to train theory.

A municipality may be held liable under section 1983 for the inadequacy of law-enforcement training "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris,* 489 U.S. 378, 388 (1989).  To state such a claim, a plaintiff must show (1) "the existing training program" is inadequate "in relation to the tasks that the particular officers must perform,"; (2) the officials have been deliberately indifferent to the rights of persons with whom the police come into contact and (3) the inadequacy of the training "actually caused" the deprivation of the alleged constitutional right. *Merritt v. County of Los Angeles,* 875 F.2d 765, 770 (9th Cir. 1989) (citations omitted).

---

has not provided enough context for the Court to determine that the cases support Plaintiff's contention, or whether a settlement resulted from the case.  It also appears that at least one case, *Predybaylo v. County of Sacramento,* No. 22-15972, 2023 WL 5125048, at *1 (9th Cir. Aug. 10, 2023), does not support Plaintiff's argument.

7

Here, the FAC asserts that Defendant failed to train jail officers in the use of excessive force in violation of the General Order and the Operations Order. (FAC ¶ 36.)  Defendant also failed to monitor or enforce the policies involving excessive use of force and failed to supervise the implementation of such order.  (*Id*. ¶ 38.)  Plaintiff points to the prior incidents of "sustained" findings of excessive force to show that Defendants had awareness of constitutional violations occurring yet failed to implement any "heighted supervision or additional supervisory measures" to ensure that the violations ceased.  (*Id* ¶ 20.)  Given the Court's findings that the prior incidents sufficiently allege a pattern, at this stage in the proceedings, it is plausible that a failure to train existed such that a *Monell* violation may exist.

**III.     Ratification**

Lastly, Plaintiff alleges a theory of ratification premised on allegations that there was a failure in the chain of command within SCSD and that supervisory officers were aware of untruthful officer reports that made it more likely for officers to use excessive force on detainees and inmates.  However, the FAC does not identify any specific individuals who were allegedly policymakers for the County.  The only named Defendants are the County of Sacramento and Deputy Dugdale.  The remainder are "Doe" Defendants who have not been individually identifies.  Given that the FAC does not identify anyone who had the capacity to act as a policymaker, the Complaint fails to allege sufficient facts to establish municipal liability under a "policymaker" theory.

## CONCLUSION

For the reasons discussed above Defendant's Motion to Dismiss (ECF No. 14) is DENIED.

IT IS SO ORDERED.

Dated:  **September 15, 2025**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE